WALN *vs.* MEIRS and others.

The master having reported, in this suit for partition, that the lands could not be divided among the heirs without great prejudice to their interests, and the court being unable, upon the evidence, to reach the same conclusion, an order was made appointing commissioners to make partition among the owners, according to their respective interests, unless they should be of opinion that such partition could not be made without great prejudice, in which case they were to report to the court accordingly.

In partition. On exceptions to master's report as to whether partition can be made without great prejudice to the interests of the owners.

*Mr. W. H. Vredenburgh,* for exceptants, John G. Meirs and wife.

*Mr. F. Voorhees,* for complainants.

THE CHANCELLOR.

The premises whereof partition is sought, are a farm of about three hundred and seventy-four acres, of which Richard Waln, deceased, died seized, situated near Hornerstown, in Monmouth county, and certain tenant-houses and lots adjacent, and two lots of wood-land. The tenants in common are his three children, who are seized of it in equal shares. The master has reported that the property is not partible without great prejudice to the interests of the owners. The defendants, Meirs and his wife, the latter being one of the tenants in common, have excepted to the report in this respect. Much testimony was taken before the master on the subject. Eleven witnesses testify that in their opinion the property is divisible, without prejudice, into three parts, equal, or very nearly so, and thirteen others, on the other hand, testify to the contrary opinion. A careful examination of the testimony leaves me in very great doubt, to say the least of it, whether the property cannot be divided without prejudice to the interests of the owners. It is obvious that so large and valuable a farm cannot be readily sold, as a whole, for an amount equal to its value. There would probably be but little competition in a public sale of so large a property, and it would be but reasonable to expect a sacrifice of a considerable part of its value, in such a disposition of it. It would, undoubtedly, sell to far better advantage in parcels of about one hundred acres each, than as a whole. The question, however, is whether the whole property, the farm, the out-lands, and the tenant-houses, can be divided into three equal,

or nearly equal parts, without great prejudice to the interests of the owners. If they can, there must be a partition. A division of the whole property, suggested by both Andrew J. Allen and George Sykes, seems to be practicable and fair. By it the property is valued at about $40,000. One hundred and twenty acres on the east side of the farm, (valued at $100 an acre,) lying on the railroad, and the Hornerstown and Allentown road, are, with tenant-houses and lots to the value of $1500, to constitute one share, the value of which, at this estimate, would be $13,500; one hundred acres on the west side of the farm, with the mansion-house and buildings, (the land valued at $50 an acre, and the mansion-house and buildings at $8000,) are to constitute another share, the value of which, at these estimates, would be $13,000; the third share would be the rest of the farm—the middle—which would contain one hundred and fifty acres, valued at $75 an acre, with the rest (valued at $2000) of the tenant-houses and lots; the value of this share, at these estimates, would be $13,250. It may be remarked that there are ten tenant-houses and one shop on the property referred to as the tenant-houses and lots, and that Mr. Allen estimates their value at $3500. The wood-land in this division would be partitioned in equal shares between the tenants in common. It will be seen that the shares are, according to the estimates, by this division, nearly equal. They might, perhaps, be made exactly so in the partition of the wood-land and the tenant-house property. The objection urged against this partition is that it not only undervalues the mansion-house and buildings, but it charges them to the share of which they are to constitute a part at a price far beyond their value to that share. The complainant's witnesses value the mansion-house and buildings at from $10,000 to $15,000. In this division they are to be estimated as worth only $8000. Again it is argued that a farm of one hundred acres would not require buildings of half the value fixed upon these in the proposed division. The witnesses of the defendants 'Meirs and wife, value the mansion-house and buildings at from

$7000 to $10,500. It will be seen that the valuations of the witnesses vary considerably. If the mansion-house and buildings are fairly estimated at $8000, and buildings of that value are not so out of proportion to the value of a farm of one hundred acres in that place as that, at that valuation, a loss would probably be occasioned to the person to whom the share might be assigned; and if the valuation put by the witnesses of the defendants Meirs and wife, upon the different parts of the farm in the proposed partition are just, then it would appear that a partition can be made without great prejudice to the interests of the owners. The defendants Meirs and wife, according to the testimony, proposed to sell the interest of the latter in the property to the complainant, Nicholas Waln, junior, at a valuation of $40,000 for the whole property, or to purchase the interest of the complainant at the same rate, but received no reply to their offer, and they now declare themselves willing to accept, as part of the share of Mrs. Meirs, the land which would be set off from the east side of the farm in the proposed division above mentioned. This land, it may be remarked, was not originally part of the farm, but was purchased by Richard Waln of Augustus Joins in 1852, and added to the farm. Two, at least, of the complainant's witnesses testify that the farm could be well and advantageously divided into two parts. One of them, Mr. Taylor, says that "the land could be divided into two parts nicely; it could be very nicely divided about where the old line.was—the Ivins line." I am unable to reach the conclusion at which the master has arrived, that the property cannot be partitioned among the heirs without great prejudice to their interests. The exception will, therefore, be sustained. The case is a proper one for the application of the practice adopted by the Court of Errors and Appeals in *Bentley* v. *Long Dock Co.*, 1 *McCarter* 486. Commissioners will be best able to determine whether the premises are or are not partible without great prejudice. There will be an order appointing three commissioners for the partition of the land among the owners and proprietors thereof, according to their

respective interests therein, unless they shall be of opinion that such partition cannot be made without great prejudice to those owners and proprietors, in which case they are to report to' this court accordingly, in order that such order may be made for the sale thereof, or of any part thereof, as shall then appear to be equitable and just.